```
                  IN THE UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


STEPHEN WALKER,                   :
                                  :   HONORABLE JOSEPH E. IRENAS
          Petitioner,             :
                                  :   CIVIL ACTION NO. 04-5072 (JEI)
     v.                           :
                                  :
UNITED STATES OF AMERICA,         :              OPINION
                                  :
          Respondent.             :
```

**APPEARANCES:**

STEPHEN WALKER, Petitioner *pro se*
# 40625-050
FCI FAIRTON
P.O. Box 420
Fairton, New Jersey 08320

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Jacqueline M. Carle, Esq.
401 Market Street, 4th Floor
Camden, New Jersey 08101
     Counsel for Respondent

**IRENAS**, Senior District Judge:

     Before the Court is Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.  Petitioner argues that his Sixth Amendment right to counsel was violated because his lawyer: (1) failed to put on an adequate defense; (2) "coerced" Petitioner into signing the plea agreement; and (3) failed to correctly calculate the sentence Petitioner would receive under the Sentencing Guidelines.  (Pet. Mot. at 5) Petitioner also asserts that the Supreme Court's holdings in *United States v. Booker*, 543 U.S. 220 (2005), and *Blakely v.*

*Washington*, 542 U.S. 296 (2006), necessitate that his sentence be vacated and his counsel was ineffective for failing to raise the issue.  (Id. at 6)  For the reasons set forth below, Petitioner's application will be denied without an evidentiary hearing.

**I.**

A federal grand jury indicted Steven Walker on November 12, 2002, for possessing a firearm after having been convicted of a felony offense in violation of 18 U.S.C. § 922(g)(1) and (2).  Walker and the Government reached a plea agreement that was signed by Petitioner and his attorney.  (See Gov't Ex. 2--Plea Agreement)  In the agreement, Walker admitted that he knowingly and willfully possessed a loaded Glock 19, 9mm handgun on August 21, 2002, while escaping from a halfway house, resulting in an upward adjustment of four levels to Petitioner's sentence pursuant to U.S.S.G. § 2K2.1.  (Id. at 5)  Petitioner's acceptance of responsibility and timely plea resulted in a downward departure of three levels.  (Id.)

Concluding that Petitioner understood the significance of the plea agreement and finding Petitioner to be satisfied by his counsel's representation, this Court accepted Petitioner's guilty plea during a hearing, held pursuant to Fed. R. Crim. P. 11, on October 23, 2003 (hereafter the "Plea Hearing").  The Court spent considerable time questioning Petitioner regarding the

voluntariness of his plea and his understanding of the plea agreement's terms before concluding that Petitioner's decision to plead guilty was voluntary and knowing. (Gov't Ex. 3- Plea Hearing Tr. at 19:11:25; 21:1-20)

On January 23, 2004, Petitioner was sentenced to a prison term of 77 months to be followed by a three-year term of supervised release. (See generally Gov't Ex. 5- Sentencing Tr.)

Petitioner filed this Section 2255 motion on October 18, 2004.

**II.**

Section 2255 provides, in pertinent part, that:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitutional or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2000); *see also* Rules Governing § 2255 Cases, Rule 1(1). Thus, Petitioner is entitled to relief only if he can establish that he is in custody in violation of federal law or the Constitution.

A district court is given discretion in determining whether to hold an evidentiary hearing on a habeas petition under Section 2255. *See Gov't of the V.I. v. Forte*, 865 F.2d 59, 62 (3d Cir.

1989).  In exercising that discretion, the court must first determine whether the petitioner's claims, if proven, would entitle him to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations.  *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 291 (3d Cir. 1991). Accordingly, a district court may summarily dismiss a motion brought under Section 2255 without a hearing where the "motion, files and records, 'show conclusively that the movant is not entitled to relief.'"  *U.S. v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *U.S. v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992)); *Forte*, 865 F.2d at 62.

For the reasons outlined below, the Court finds that the evidence in the record conclusively demonstrates that Petitioner is not entitled to the relief sought.  Accordingly, Petitioner's application will be denied without an evidentiary hearing.

### III.
#### A.

Petitioner asserts that his counsel's constitutionally ineffective assistance prevented Petitioner from making a knowing and voluntary guilty plea.  Petitioner asserts two arguments in support of his contention: (1) his lawyer, Troy Archie failed to visit Petitioner at his place of detention in order to consult with Petitioner about crafting a defense strategy and (2) his

4

counsel "coerced" him into signing a plea agreement by promising him that he would receive credit for his state sentence against his federal sentence.  (Pet. Mot. at 5)

To succeed on this claim, Petitioner "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Dickerson v. Vaughn*, 90 F.3d 87, 92 (3d Cir. 1996) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  We must also keep in mind that, "'[t]he representations of the defendant, his lawyer, and the prosecutor at the plea hearing as well as any findings made by the judge in accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity.'" *Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994)(quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Thus, "a petitioner challenging the voluntary nature of a facially valid guilty plea based on unfulfilled promises or representations by counsel *must advance specific and credible allegations detailing the nature and circumstances of such promises or representations*."  *Id.* (emphasis added)

Whether or not Mr. Archie actually visited Petitioner while incarcerated, Petitioner's claim that his counsel failed to adequately consult with and represent him is directly contradicted by Petitioner's own certification and statements

5

made under oath.  More importantly, the Court provided Petitioner with ample opportunity to consult with his lawyer at the plea hearing.

At the Plea Hearing, Petitioner testified that he reviewed the plea agreement with his attorneys and that they answered any questions Petitioner had regarding the agreement.  (Gov't Ex. 3-- Plea Hearing Tr. at 19:19-25; 20:1-3)[1]  The Court specifically advised Petitioner that he was free to further consult with his lawyer during the hearing:

> THE COURT: Now, if at any time today and for any reason you want to talk to Mr. Singleton about anything at all, you just signal to me or say something to me, and I will stop the proceedings and I will give you all the time and all the privacy you need to discuss whatever it is you want to discuss with him.
>     And remember, you don't have to tell me what you want to discuss.  Just say I want to talk to my lawyer, and that's sufficient for me.  Okay. Do you understand that?
>
> THE DEFENDANT: Believe me I will.

(Gov't Ex. 3-- Plea Hearing Tr. 6:12-21)  Indeed, Petitioner even concedes that "[P]etitioner saw his attorney a few times before court."  (Pet. Br. at 8)

Additionally, paragraphs three, seventeen and thirty-nine of Petitioner's signed Application for Permission to Enter Plea of Guilty also support the conclusion that counsel adequately

---

[1] The Plea Hearing transcript indicates that Petitioner was represented by Gregory Singleton, Esq. at the hearing.  Mr. Archie was also representing Petitioner at the time, although he was not present that day.

6

consulted with Petitioner.  Specifically, Petitioner certified that "I am satisfied that I have had enough time to discuss this matter with my lawyer" and "I am satisfied that my lawyer understands the information which I have provided, and that my lawyer has counseled and advised me on the nature of each charge and on all possible defenses that I might have in this case."  (Gov't Ex. 4)  Petitioner also certified, "I believe that my lawyer has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP MY LAWYER HAS GIVEN ME."  (Id. at ¶ 39)(emphasis in original).[2]

In light of (1) the Court providing Petitioner ample opportunity to consult with his lawyer at the plea hearing, (2) Petitioner's several statements under oath and in the Plea Agreement itself that he was satisfied with his lawyer's attention to his case, and (3) the lack of any specific allegations regarding what information Petitioner's counsel failed to impart to him, we cannot conclude that but for Mr. Archie's failure to visit Petitioner in prison, Petitioner would not have pled guilty.  Accordingly, Petitioner's request for relief on this ground will be denied.

Petitioner next asserts that his counsel "coerced" him into signing a plea agreement by promising him that he would receive

---

[2] Petitioner's certified Application For Permission To Enter A Guilty Plea also contained nine separate paragraphs which employed the same language: "my lawyer has explained to me, and I understand."  (Gov't Ex. 4 at ¶¶ 18-24, 36 & 38)

7

credit for his state sentence against his federal sentence. (Pet. Mot. at 5)  Once again, Petitioner's allegation contradicts his own certification and the testimony he gave under oath at the Plea Hearing.

First, Petitioner's certified Application For Permission To Enter Plea of Guilty states: "I hereby declare that I have not been forced, coerced or threatened in any manner by any person to plead GUILTY to these charges."  (Gov't Ex. 4 at ¶ 35). Petitioner's signature block of the plea agreement itself also reads: "I state that there have been no additional promises or representations made to me by any officials or employees of the United States Government *or by my attorney* in connection with this matter. /s/ Steven Walker."  (Gov't Ex. 2 at p. 4)(emphasis added).

Second, at the Plea Hearing the Court specifically asked Petitioner:

> THE COURT: Has anyone or has the Government promised you a particular sentence in return for your guilty plea, other than what's in the plea agreement itself?
>
> THE DEFENDANT: No.
>
> . . .
>
> THE COURT: Has anyone promised you anything in return for your guilty plea, other than what's in the plea agreement itself?
>
> THE DEFENDANT: No, nobody.

(Gov't Ex. 3--Plea Hearing Tr. at 21:10-20)

8

Accordingly, this Court found Petitioner's decision to enter a guilty plea to be voluntary, knowing and intelligently made and "done with no threats, no promises, no secret promises by the Government, no promise of any kind that is not specifically set forth in the written plea agreement itself."  (Id. at 24:1-5)

As the Third Circuit has explained, "a habeas petitioner challenging the voluntary nature of his guilty plea faces a heavy burden.  The plea colloquy is designed to uncover hidden promises or representations as to the consequences of a guilty plea." *Zilich*, 36 F.3d at 320.  For this reason, a habeas petitioner must put forth "specific" and "credible" allegations describing the "nature and circumstances" of the alleged coercive promise in order to overcome the weight carried by a petitioner's own statements under oath.  *Id.*

Petitioner fails to overcome his burden in this case.  In the face of the above-quoted record, Petitioner has put forth no specific allegations about what exactly he understood his counsel to say, when and where the alleged promise was made, or how it was communicated.  All Petitioner alleges is that "[my] attorney told [me] that if [I] signed the plea agreement that the time I spent in Newark, New Jersey [serving my state sentence] would count against my federal sentence."  (Pet. Br. at 8; Pet. Mot. at 5) Indeed, on this record the Court cannot even specifically

9

identify the "state sentence" to which Petitioner refers.[3] Without more explicit allegations regarding the nature of the alleged promise and surrounding circumstances we must deny Petitioner's request for relief.

**B.**

Next Petitioner claims that his counsel was constitutionally ineffective with respect to various issues affecting the calculation of his sentence under the Sentencing Guidelines. First, Petitioner asserts that his counsel failed to move for a downward departure which would have resulted in a criminal history category of IV instead of VI.  Second, Petitioner asserts that counsel failed to identify errors made in Petitioner's presentence report which resulted in an inflated criminal history points calculation.  Third, Petitioner asserts that his counsel allowed him to sign a plea agreement which erroneously contained a four level upward adjustment pursuant to U.S.S.G. § 2K2.1(b)(5).

A convicted defendant seeking to have his conviction or sentence vacated due to the incompetence of counsel must show that his counsel's performance was deficient and that he was prejudiced by the deficiency.  *Strickland v. Washington*, 466 U.S.

---

[3] When Petitioner was sentenced on the federal charge, he was awaiting sentencing in New Jersey Superior Court on separate escape and burglary convictions.

668, 687 (1984).

(1)

With respect to the first issue, we find that counsel's performance was not deficient because he did indeed raise Petitioner's criminal history category at sentencing.  (See Gov't Ex. 5- Sentencing Tr. 4:3-24)  The Court considered counsel's argument that many of Petitioner's previous crimes were relatively less serious than other defendants who would also be placed in a criminal history category of six but nevertheless held: "I don't think [that Walker] . . . meets the requirement for an actual downward departure for criminal history, but I do think within the range of normal, he is at the less serious end of the 6 than I might normally find."  (Id. at 12:18-22)  Accordingly, this Court sentenced Petitioner to the lowest term of months within Category VI.  Thus, Petitioner's claim that counsel failed to raise the downward departure argument is refuted by the record and we will deny relief on this claim.

(2)

Next, Petitioner alleges that his counsel failed to identify errors in the assignment of criminal history points to two prior state convictions that were consolidated for sentencing.  Petitioner was separately convicted of receiving stolen property in 1996 and two counts of burglary in 1997.  The cases were consolidated for sentencing in New Jersey Superior Court, and on

11

January 23, 1998, for each conviction, Petitioner was sentenced to three years probation and 364 days imprisonment with credit for time served, with the sentences running concurrently. Sometime in 1999 Petitioner violated his probation and was sentenced to three years incarceration for each underlying sentence of probation, again with the sentences running concurrently.  Petitioner received a total of six criminal history points for these offenses: (a) three for the 1996 offense and subsequent violation of probation and (b) three for the 1997 offense and subsequent violation of probation.

Petitioner believes the assignment of six total points was erroneous for two reasons. Petitioner claims that (1) he should have received two points for each offense instead of three, (resulting in a total of four criminal history points, not six) and (2) because the two offenses were consolidated for sentencing they should have been treated as one offense, not two under the Guidelines.  Both arguments fail.

With respect to sentences imposed for violating probation, Petitioner correctly notes in his brief that Comment 11 to § 4A1.2(k) states, "[r]ather than count the original sentence and the resentence after revocation as separate sentences, the sentence given upon revocation should be added to the original sentence of imprisonment, if any, and the total should be counted as one sentence."

We find that § 4A1.2(k) was properly applied in Petitioner's

12

case.  Petitioner was originally sentenced to 364 days imprisonment and three years probation for each offense.  If he had not violated probation, he would have received two points for each offense because each sentence was "at least sixty days" and not more than one year and one month.  § 4A1.1(b).  However, after Petitioner's probation was revoked, he was sentenced to three years imprisonment for violating parole.  Section 4A1.2(k) instructs that the original sentence and the resentence be added together (364 days plus 3 years), and then criminal history points are assigned to the sum.

Thus, in Petitioner's case, the added three years of imprisonment increased the criminal history points assigned to his original sentences from two to three because three points are assigned "for each prior sentence of imprisonment exceeding one year and one month."  § 4A1.1(a).  Accordingly, the assignment of three criminal history points for each offense (resulting in a total of six points) was correct.  Because there was no error, Petitioner's counsel could not have been ineffective for failing to challenge the computation.

In a related argument, Petitioner asserts that because the 1996 and 1997 offenses were consolidated for sentencing, they should have been treated as related sentences instead of separate, unrelated sentences under the Guidelines.  Comment three to § 4A1.2 specifically addresses this issue: "Prior sentences are not considered related if they were for offenses

13

that were separated by an intervening arrest (i.e. the defendant is arrested for the first offense prior to committing the second offense). . . . *Otherwise*, prior sentences are considered related if they resulted from offenses that . . . (C) were consolidated for trial or sentencing." (emphasis added).  Petitioner was arrested for the first offense on December 21, 1995.  He was arrested for the second offense on September 10, 1997.  Because Petitioner was arrested for the first offense before committing the second offense, the sentences for each crime were correctly considered separately in assigning criminal history points.  Accordingly, we will deny Petitioner relief on this theory as well.

(3)

Petitioner also asserts that his counsel erroneously advised him to sign a plea agreement that stated that Petitioner was eligible for a four level enhancement for possession of a weapon in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(5).  Petitioner asserts that his counsel erred because (a) the other crime that formed the basis for enhancement-- escape from the halfway house-- was not a felony; and (b) the gun found in Petitioner's possession when he was arrested was not possessed "in connection with" his escape.

First, we hold that the offense of escape, under New Jersey law, is a felony under the Sentencing Guidelines.  A "felony

14

offense" is "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained."  U.S.S.G. § 2K2.1, cmt. n.7.  "Escape" in New Jersey is a crime of either the second or third degree, N.J.S.A. § 2C:29-5, which carries with it a term of imprisonment of at least three years.  N.J.S.A. § 2C:43-6(a)(2)-(3).  Therefore, escape is a felony for Sentencing Guideline purposes and Petitioner's counsel did not err by failing to challenge that aspect of the sentence calculation.

    Second, Petitioner possessed the 9mm Glock "in connection with" his escape.  On May 17, 2002, Petitioner failed to return to a halfway house in Camden after being released for a work assignment.  Five days later, the State of New Jersey obtained a warrant for Petitioner's arrest charging that he escaped from a state correctional facility.  By August, with the assistance of the U.S. Marshals, law enforcement officers were able to locate Petitioner.  In the early morning hours of August 21, 2002, law enforcement officers entered the apartment of Petitioner's brother where they found Petitioner asleep on a quilt on the floor.  Petitioner was taken into custody.  The officers then found the 9mm Glock loaded with 12 rounds of ammunition protruding from under the quilt Petitioner was lying on.  Petitioner admitted that the gun belonged to him and that his

brother had no knowledge of the gun.[4]

Petitioner asserts that his counsel erred by not recognizing and arguing that Petitioner did not possess the gun "in connection with" his escape, which occurred three months earlier. We find that Petitioner possessed the gun in connection with his escape, therefore Petitioner was not prejudiced by his counsel's alleged error.

In *United States v. DeJesus*, the Third Circuit reaffirmed its "broad construction" of § 2K2.1(b)(5) "'as covering a wide range of relationships between the firearm possession and the other felony offense. . . . the phrase 'in connection with' expresses some relationship or association, one that can be satisfied in a number of ways such as a causal or logical relation or other type of relationship.'" 347 F.3d 500, 511 (3d Cir. 2003) (quoting *United States v. Loney*, 219 F.3d 281, 284 (3d Cir. 2000)).

The Court specifically recognized that this standard may be met in "myriad factual contexts" and discussed examples of how the standard has been applied in other cases. *Id.* at 512. If the weapon "emboldened" or "facilitated" the other crime, if it "promoted" the crime, if the weapon "provided an added sense of security and had a substantial potential for use," or if it

---

[4] The facts in this paragraph were compiled from Petitioner's papers in support of the motion and the Government's Answer and supporting exhibits. Additional relevant details were taken from the Presentence Investigation Report, dated December 17, 2003, used at Petitioner's sentencing.

"potentially facilitated-- i.e., had some potential emboldening role in-- a defendant's felonious conduct," a four level enhancement under § 2K2.1(b)(5) is appropriate. *Id.* at 513.

On the other hand, if the gun possession is "purely incidental" to a legitimate and unrelated purpose, such as an armed security guard caught buying drugs on his way home from work, an enhancement would most likely be inappropriate. *United States v. Gregory*, 345 F.3d 225, 230 n.3 (3d Cir. 2003).

In this case, we note that there is no evidence that Petitioner possessed a gun on May 17, 2002, when he failed to return to the halfway house. Thus, there is no basis to conclude that Petitioner possessed a gun to facilitate his departure on that day or embolden him to not return on time. However, escape is, in a sense, a continuing violation. To use an old slang term, Petitioner was "on the lam"[5] and subject to apprehension at any time. We may infer that Defendant's loaded gun provided him an added sense of security and had a substantial potential for use in the event law enforcement sought to apprehend him and return him to custody. The fact that Petitioner did not in fact attempt to use the gun when he was apprehended does not alter our conclusion. *See Gregory*, 345 F.3d at 229 ("the enhancement applies to possession as well as use, and a concealed weapon can further a criminal objective even if a defendant never lets

---

[5] The Oxford English Dictionary defines "lam": "Escape, flight. *Esp. in phr.* on the lam, on the run."

17

anyone know that he/she is in possession of it."). Thus, we find that Defendant's possession of a 9mm Glock had a logical relationship or association with his escape sufficient to support the conclusion that he possessed the gun "in connection with" the offense.[6] Accordingly, we find Petitioner was not prejudiced by his counsel's failure to raise this issue at sentencing.

### C.

Lastly, Petitioner asserts that *Blakely v. Washington*, 542 U.S. 296 (2006) and *United States v. Booker*, 543 U.S. 220 (2005) dictate that his sentence be vacated because a jury of his peers should have made the factual determination as to whether Petitioner possessed a firearm in connection with the commission of another felony. (Pet. Br. at 6)

Petitioner's conviction became final before *Blakely* and *Booker* were decided. The rule announced in *Blakely/Booker* is a

---

[6] Petitioner cites a case from the Ninth Circuit with similar facts but we find it distinguishable. In *United States v. Ellis*, 241 F.3d 1096 (9th Cir. 2001), Ellis failed to appear for sentencing and a bench warrant was issued for his arrest. Three days later, he was apprehended in the house he shared with his girlfriend. The gun he constructively possessed was an unloaded hunting rifle which was wrapped in a towel and placed on a shelf in a bedroom closet. The uncontroverted evidence established that the gun belonged to Ellis's girlfriend and that there was no ammunition anywhere in the house. The Court also found that during the three intervening days between Ellis's failure to appear and his apprehension, he had not touched the gun. Thus the Ninth Circuit held that an enhancement pursuant to § 2K2.1(b)(5) was inappropriate because "the presence of the rifle on the closet shelf was . . . just the sort of 'accident or coincidence' that the phrase 'in connection with' was specifically meant to exclude." *Id.* at 1100.
   In this case, Petitioner admitted that the gun-- a loaded 9mm Glock, as opposed to an unloaded hunting rifle-- belonged to him. Moreover, the gun was placed within his immediate reach even as he slept. Thus we conclude that the gun's placement in this case was anything but an accident or coincidence.

new rule of criminal procedure that is not retroactively applicable to cases on collateral review.  *Lloyd v. United States,* 407 F.3d 608 (3d Cir. 2005); *United States v. Armstrong*, No. 05-2333, 2005 U.S. App. LEXIS 22124 at *3 (3d Cir. Oct. 13, 2005) ("*Booker* does not apply retroactively to cases on collateral review.").  Accordingly, Petitioner's claim fails.

**IV.**

For the reasons set forth above, this Court will deny Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 without an evidentiary hearing. Because the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.  *See* 28 U.S.C. § 2253(c).  The Court will issue the appropriate order.

Date:     May  3rd , 2006

s/*Joseph E. Irenas*
**JOSEPH E. IRENAS, S.U.S.D.J.**